Appeal No. 24-3835

————————

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

————————

FEDERAL TRADE COMMISSION, *et al.*
*Plaintiffs – Appellees,*

v.

AMAZON.COM, INC.,
*Defendant – Appellee,*

v.

AMERICAN BOOKSELLERS ASSOCIATION, INC.,
*Proposed Intervenor, Movant – Appellant.*

————————

Appeal from denial of motion to intervene under Fed. R. Civ. P. 24(a)(2) and 24(b)(1)(B) by the United States District Court for the Western District of Washington at Seattle in case no. 2:23-cv-1495, Hon. John H. Chun presiding

————————

**REPLY BRIEF
FOR AMERICAN BOOKSELLERS ASSOCIATION, INC.,
PROPOSED INTERVENOR AND MOVANT-APPELLANT**

William D. Fisher, Esq.
Potomac Law Group, PLLC
1455 NW Leary Way, #400
Seattle, WA 98107
(206) 599-8888
wfisher@potomaclaw.com

Timothy W. Bergin, Esq.
Potomac Law Group, PLLC
1717 Pennsylvania Ave., NW, #1025
Washington, DC 20006
(703) 447-4032
tbergin@potomaclaw.com

Counsel for Proposed Intervenor, Movant - Appellant
American Booksellers Association, Inc.

# TABLE OF CONTENTS

Page:

PRELIMINARY STATEMENT ................................................................ 1

I.    ABA MEETS THE STANDARDS FOR INTERVENTION
AS OF RIGHT UNDER RULE 24(a)(2) IN THIS CASE ............. 1

    A.    ABA's Claim Is Closely Related to, Fully Consistent
with, and Asserted Under Plaintiffs' Sherman Act
Claim (Incorporated by Reference by ABA) Alleging
Amazon's Monopolization of a Nationwide Online
Superstores Market ............................................................... 1

    B.    Absent Intervention by ABA, Disposition of This Case
May as a Practical Matter Impair or Impede ABA's
Ability to Protect Its Related Interest Presented Here .......... 10

    C.    The Court Should Reject Amazon's Suggestions —
Neither of Which Are Joined by Plaintiffs — That
Plaintiffs Will Adequately Represent ABA's Interest
in This Case, and Alternatively, That ABA's Motion
to Intervene Was Untimely .................................................... 14

II.    ABA MEETS THE STANDARDS FOR PERMISSIVE IN-
TERVENTION UNDER RULE 24(b)(1)(B) IN THIS CASE ........ 18

III.    RESOLUTION OF THIS APPEAL SHOULD BE EXPEDIT-
ED TO PREVENT THE APPEAL FROM BECOMING MOOT.... 19

CONCLUSION ........................................................................... 21

FORM 8: CERTIFICATE OF COMPLIANCE FOR BRIEFS ............. appended

# TABLE OF AUTHORITIES

## Cases

*American Booksellers Assn., Inc. v. Barnes & Noble, Inc.*,
    135 F.Supp.2d 1031 (N.D. Cal. 2001) ........................................... 19

*Apple, Inc. v. Pepper*, 587 U.S. 273 (2019) ........................................... 7

*Brown v. Amazon.com, Inc.*,
    2023 WL 5793303 (W.D. Wash. Sept. 7, 2023) ......................... 3, 7, 9

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) .............................. 9-10

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
    __ F.4th __, 2024 WL 3642432 (4th Cir. Aug. 5, 2024) ............... 5-6, 12

*Kalbers v. United States Dept. of Justice*,
    22 F.4th 816 (9th Cir. 2021) ........................................................... 17

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) ........... 15

*Southwest Center for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) .......................................................... 8

*Stringfellow*, 783 F.2d 821 (9th Cir. 1986),
    *vacated on other grounds*, 480 U.S. 370 (1987) ......................... 13-14, 20

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) ....................... 15

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ......................................................... 14, 19

*United States v. State of Oregon*,
    839 F.2d 635 (9th Cir. 1988) ......................................................... 4, 10, 15

*Westchester Fire Ins. Co. v. Mendez*,
    585 F.3d 1183 (9th Cir. 2009) ....................................................... 2

*Western Concrete Structures Co. v. Mitsui & Co. (USA), Inc.,*
    760 F.2d 1013 (9th Cir. 1985) ........................................................ 8

*Western Watersheds Project v. Haaland,*
    22 F.4th 828 (9th Cir. 2022) .................................................... 4, 15-17

*Weyerhaeuser Co. v. Ross-Simmons Hardware Lumber Co.,*
    549 U.S. 312 (2007) ....................................................................... 6

## Statute

Sherman Act, §2 ........................................................................ passim

## Rules

Federal Rules of Civil Procedure

    Rule 24(a)(2) ...................................................................... passim

    Rule 24(b)(1)(B) ................................................................... 18, 21

## Treatise

Areeda & Hovenkamp, *Antitrust Law* (4th and 5th eds. 2024)

    ¶310c7 ............................................................................ 5, 12

    ¶350b ................................................................................. 7

## PRELIMINARY STATEMENT

Broadly speaking, ABA shows below that: **(1)** the opposition by Plaintiffs to ABA's intervention in this case essentially reflects Plaintiffs' misapprehension of ABA's claim for solely equitable relief against Amazon under §2 of the Sherman Act that ABA seeks to pursue in this case (at least unless Plaintiffs undertake to do so); ABA's claim fits well within and bolsters Plaintiffs' corresponding equitable claim against Amazon for monopolization of alleged online superstores market in violation of §2 of the Sherman Act; **(2)** Amazon's opposition to ABA's intervention in this case essentially reflects only Amazon's determination to avoid enhanced exposure to antitrust liability, and to the equitable relief sought, if ABA's claim is pursued in this case; and **(3)** ABA's intervention in this case is strongly supported by applicable precedent of this Court; the case primarily relied on in opposition is plainly distinguishable.

## I. ABA MEETS THE STANDARDS FOR INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2) IN THIS CASE.

### A. ABA's Claim Is Closely Related to, Fully Consistent with, and Asserted Under Plaintiffs' Sherman Act Claim (Incorporated by Reference by ABA) Alleging Amazon's Monopolization of a Nationwide Online Superstores Market.

In moving to intervene in this case, ABA expressly incorporated by reference Plaintiffs' Sherman Act claim alleging Amazon's monopolization of a nationwide online superstores market. Dkt. # 205 below, p. 3 lines 9-11 (SER-

188).[1]    ABA further summarized allegations of Plaintiffs' Complaint that supported ABA's closely related claim alleging Amazon's monopolization of that same online superstores market.  *Id.* pp. 1-2 (SER-186-187).   In particular, Plaintiffs allege that "Amazon's online superstore unites its Retail and Marketplace arms" (Dkt. # 171 below, ¶76) (SER-25-26) — the latter encompassing retail sales on Amazon by third-party sellers, the former encompassing online retail sales by Amazon itself, including sales of products purchased by Amazon from wholesalers, *e.g.*, book publishers.  *See id.* ¶¶68-71, 425 (SER-24-25, 129).  ABA in turn alleged that its members include actual and potential third-party sellers of books on Amazon or rival online superstores, and that Amazon has restrained such online competition by ABA members by abusing its monopoly power in the online superstores market to coerce book publishers into acceding to an unreasonable wholesale price differential that gives Amazon an unfair competitive advantage over ABA members in the online superstores market.  *See* Dkt. # 244 below, pp. 1-4, 7-9 (FER-7-8, 13-15); Dkt. # 205 below, pp. 3-6 (SER-188-191).

Plaintiffs are clearly wrong, therefore, in repeatedly suggesting that ABA's claim in this case (which Plaintiffs acknowledge may constitute "a legitimate

---

[1] In these circumstances, ABA was not required to file with its motion a formal pleading largely duplicating Plaintiffs' expansive Complaint. *See*, *e.g.*, *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1188 (9th Cir. 2009), addressed in ABA's Opening Brief, p. 13 n.15.

antitrust claim against Amazon")[2] is not based on the same online superstores market alleged by Plaintiffs. ABA expressly declared in the District Court below that ABA "adopted Plaintiffs' alleged nationwide relevant market consisting of online 'superstores'" (FER-7, lines 8-9), and that ABA's claim "will *not* require formal definition of any 'submarket' for sales of books through online superstores, just as Plaintiffs properly do not allege submarkets for any other category of products sold through online superstores" (FER-9, lines 8-10) (emphasis in original).[3]

While ABA's claim necessarily focuses on books simply because ABA's members are booksellers, Amazon's coercive anticompetitive conduct of the type raised by ABA also potentially affects wholesalers of other products to Amazon and to competing third-party sellers of such products in the alleged online superstores market. *See*, *e.g.*, *Brown v. Amazon.com, Inc*., 2023 WL 5793303, at *8, 11 (W.D. Wash. Sept. 7, 2023) (Chun, D.J.) (Amazon's imposition of wholesale price rebates may plausibly have resulted in higher retail pricing by third-party sellers through online superstores by "pressur[ing] suppliers to sell their

---

[2] Government Appellees' Answering Brief in this appeal ("Gov't Br."), p. 1.

[3] ABA added that it "referred colloquially in its Motion to a submarket for books simply to describe the affected product category, not to allege a separate product and geographic market for assessing Amazon's alleged conduct." *Id*. note 2.

products to Amazon's competitors at [discriminatory higher] prices ... [thereby] restricting competition").

Plaintiffs are likewise wrong in suggesting that their failure to allege and refusal to pursue Amazon's coercive anticompetitive conduct of the type raised by ABA in this case is somehow a reason to deny intervention rather than grant it. To the contrary, that a prospective intervenor "might raise new, legitimate arguments is a reason to grant intervention, not deny it." *Western Watersheds Project v. Haaland*, 22 F.4th 828, 839 (9th Cir. 2022). *See also United States v. State of Oregon*, 839 F.2d 635, 638 (9th Cir. 1988) (addressed in ABA's Opening Brief, pp. 20-21). Plaintiffs acknowledge that the "gravamen of [their] ... online superstores claim is that Amazon is using coercive and illegal tactics to maintain its existing monopoly" but now assert simply that the Amazon tactics legitimately raised by ABA in this regard (*see* note 2 and accompanying text, *supra*) go beyond the Amazon tactics that Plaintiffs are prepared and willing to pursue in this case (Gov't Br. p. 16 & n.4) — which under *Western Watersheds* "is a reason to grant intervention, not deny it." [4]

---

[4] If ABA had confined its claim to illegal Amazon tactics that are essentially the same as those that Plaintiffs are prepared and willing to pursue in this case (which Plaintiffs appear to posit as a supposed prerequisite for intervention as of right under Rule 24(a)(2), *see id.*), intervention by ABA would presumably be denied, and would not likely be pursued, to the extent that Plaintiffs adequately represented the interest of ABA members in obtaining equitable relief from such tactics.

This conclusion is strongly supported here by applicable antitrust law. Thus, the Fourth Circuit recently reversed summary judgment for an alleged monopolist under §2 of the Sherman Act, holding that evidence of its anticompetitive conduct was sufficient "based on the *combined effect* of two main components" of such conduct which, while factually distinct, were both allegedly "part of a singular, coordinated anticompetitive effort." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, ___ F.4th ___, 2024 WL 3642432, at *13 (4th Cir. Aug. 5, 2024) (emphasis in original). The Fourth Circuit recognized in this regard that "[a] monopolist bent on preserving its dominant position is likely to engage in ... varied exclusionary practices .... but the pattern gives increased plausibility to the claim" of unlawful monopolization, especially if the separate practices are each independently anticompetitive. *Id*. at *12, quoting Areeda & Hovenkamp, *Antitrust Law* ¶310c7 (4th and 5th eds. 2024).

In the present appeal, ABA similarly contends that Amazon has unlawfully maintained its monopoly power in the alleged online superstores market through various anticompetitive practices "based on the *combined effect* of two main components" of such conduct — including Amazon's coercive use of monopoly power both as a wholesale purchaser and as the gatekeeper of its third-party marketplace — as "part of a singular, coordinated anticompetitive effort" (*id*. at *13) to prevent third-party sellers on any online superstore from effectively

5

competing with Amazon. Plaintiffs apparently agree with such analysis, at least in principle, judging by Plaintiffs' Notice of Supplemental Authority filed below on August 9, 2024 (Dkt. # 267 below) (FER-18) in opposition to Amazon's pending motion to dismiss for lack of sufficient allegations of anticompetitive conduct in the online superstores market allegedly monopolized by Amazon. Plaintiffs' Notice featured the Fourth Circuit's recent *Duke Energy* decision addressed above, cited by Plaintiffs for the principle that "'multi-faceted'" anticompetitive conduct by a monopolist "must be considered as a whole" (*id.*, citing *Duke Energy*).

The two main components of Amazon's anticompetitive conduct in the online superstores market do not become unrelated, for purposes of ABA's motion to intervene in this case, simply because one such component (Amazon's MFN policy) involves coercive use of Amazon's monopoly power directly against third-party sellers (indirectly against rival online superstores) while the other such component involves coercive use of Amazon's monopoly power against wholesalers in order to thwart competition by third-party sellers (including ABA members) and rival online superstores. The latter abuse of Amazon's monopoly power is referred to in the case law as monopsonistic but the "close theoretical connection between monopoly and monopsony" is well recognized, *Weyerhaeuser Co. v. Ross-Simmons Hardware Lumber Co.,* 549 U.S. 312, 320-321 (2007), such that Amazon is "both a monopolist and a monopsonist" inasmuch as its anticomp-

etitive conduct "affects both the downstream and the upstream markets." *Apple, Inc. v. Pepper*, 587 U.S. 273, 287 (2019). *See* ABA's Opening Brief, p. 5 & n.7.

Amazon is thus wrong in asserting that ABA's claim in this case is somehow inconsistent with Plaintiffs' corresponding claim.[5] Amazon's monopsonistic extraction of discriminatory low prices from wholesalers "is treated largely the same way" under antitrust law as Amazon's monopolistic imposition of high prices on retail customers; each may involve reduced output injuring "*both* consumers and suppliers." Areeda & Hovenkamp, ¶350b (emphasis in original). *See id*. n.4 (if Amazon "has market power downstream, the selling prices will rise even as input costs are reduced"); Plaintiffs' Complaint (SER-129), ¶425 (for lack of effective competition, Amazon has raised book prices substantially).

Moreover, Amazon's monopsonistic extraction of discriminatory low prices from book publishers has prevented ABA members from effectively competing with Amazon as third-party sellers of books on Amazon or rival online superstores, just as in *Brown v. Amazon.com, Inc*, *supra*, third-party sellers of other products were allegedly prevented from competing effectively in the online superstores market by Amazon's monopsonistic extraction of discriminatory price terms from other wholesale suppliers. *See* pp. 3-4, *supra*. Amazon's baseless suggestion that ABA members do not include actual and potential third-party sellers in the online

---

[5] *See* Brief of Defendant-Appellee in this appeal ("Amazon Br."), p. 19.

superstores market is immaterial because ABA's factual allegations should be accepted as true for purposes of its motion to intervene in this case. *See Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001); FER-8 (ABA allegation that "[its] members include actual and potential third-party sellers of books on competing [online] superstore platforms").

Amazon also plainly misrepresents the legal basis for ABA's claim in this case, asserting that it was brought under the Robinson-Patman Act (*see* Amazon Br. p. 14), although ABA set forth in detail below that given Amazon's monopoly (and resultant monopsony) power, ABA's claim was brought under §2 of the Sherman Act rather than the Robinson-Patman Act. *See* SER-188-189 & n.5. *See also* ABA's Opening Brief, p. 5 & n.8. Amazon accordingly purports to distinguish one of the authorities presented by ABA in support of applicability of §2 of the Sherman Act (Amazon Br. p. 18), but to no avail.

Instead, this Court's decision in *Western Concrete Structures Co. v. Mitsui & Co. (USA), Inc.,* 760 F.2d 1013, 1017-1018 (9th Cir. 1985), addressed in ABA's Opening Brief, fully supports ABA's claim that Amazon violated §2 of the Sherman Act in part by using its monopoly (and resultant monopsony) power to *coerce book publishers to agree* to wholesale price discrimination in favor of Amazon, enabling it to undermine competition by ABA members as actual and potential third-party sellers (via Amazon or its rivals) in the online superstores

market, thereby helping to maintain Amazon's monopoly power in that market (in conjunction with related anticompetitive conduct of Amazon, including the parallel conduct alleged in the *Brown* case addressed *supra*).

By no means is ABA's claim unrelated to Plaintiffs' claim that Amazon violated §2 of the Sherman Act by using its monopoly power to coerce third-party sellers to forgo price competition via Amazon's rivals in the online superstores market, thereby helping to maintain Amazon's monopoly power in that market. Appellees' reliance in this regard on *Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998), is wholly misplaced. There the Court recognized that the "relationship" requirement under Rule 24(a)(2) is satisfied "if the resolution of the plaintiff's claims actually will affect the applicant" for intervention, and held simply that the applicants' "claims of discrimination against *male* employees" were "unrelated to plaintiffs' particular claims of 'hostile-work-environment' discrimination against *female* employees" (*id*. at 409-410) (emphasis added) given that these respective competing claims "share no common factual proof." *Id*. at 412. By contrast, as shown above and elaborated below, ABA's claim here shares with Plaintiffs' corresponding claim "common factual proof" such that resolution of Plaintiffs' claim in this case, absent intervention by ABA, may impede ABA's ability to pursue its related claim presented here.

**B.    Absent Intervention by ABA, Disposition of This Case May as a Practical Matter Impair or Impede ABA's Ability to Protect Its Related Interest Presented Here.**

Plaintiffs acknowledge that disposition of this case without intervention by ABA "may as a practical matter impair or impede" ABA's ability to protect its interest, as Rule 24(a)(2) provides, given any "interrelationship" between the claim asserted by ABA here and Plaintiffs' corresponding claim, because under *United States v. State of Oregon*, 839 F.2d 635, 638 (9th Cir. 1988), ABA's related claim might as a practical matter be impeded by the *stare decisis* effect of factual or legal determinations in this case.  Gov't Br. p. 26.  Under this approach, which is consistent with *Donnelly*, 159 F.3d at 410, 412 (tying together "the 'relationship' requirement" with the effect *vel non* on the putative intervenor of resolving plaintiffs' claims, depending on whether common issues were raised), the relationship factor under Rule 24(a)(2) tends to merge with the "impair or impede" factor thereunder in that a putative intervenor's "related" claim may (absent intervention) generally be jeopardized by potential *stare decisis*.

Plaintiffs maintain, however, that this is not so here only because ABA's claim supposedly "does not overlap with the government's claims on 'issues such as market definition, market power, and exclusionary conduct.'"  Gov't Br. pp. 26-27 (quoting ABA's Opening Brief, p. 19).  As shown in part I.A above, however, Plaintiffs make such unfounded assertion only because they misapprehend ABA's

claim, and only for that reason do Plaintiffs likewise dismiss any potential *stare decisis* impediment to pursuit of ABA's claim if it is precluded from intervening in this case.

In this regard, Plaintiffs suggest that their corresponding claim "involve[s] different theories of anticompetitive conduct (depriving rivals of ways to gain scale vs. using monopsony power to obtain discriminatory wholesale prices) in different markets (online superstores vs. books)." Gov't Br. p. 27. As shown in part I.A above, however, ABA has expressly embraced Plaintiffs' alleged online superstores market (and disclaimed reliance on any narrower market), and has also expressly alleged that Amazon's coercive extraction of discriminatory wholesale prices prevents third-party sellers (including ABA members and others) from effectively competing with Amazon via rival online superstores, thus preventing such rivals from gaining scale that would enable them to compete more effectively with Amazon. In short, ABA's claim plainly *does* overlap with Plaintiffs' corresponding claim, in these as well as other ways discussed below.

The risk is acute that ABA may be impeded from pursuing its claim, if it is not allowed to intervene in this case, because Amazon makes clear that it will seek (and is already seeking) factual and legal determinations in this case that could have a negative *stare decisis* effect on ABA's claim. For example, Amazon seeks a determination defining the relevant market in a way that would seemingly dilute

Amazon's monopoly (and resultant monopsony) power. *See* Amazon Br. pp. 3, 5 n.4 (asserting that "Plaintiffs' 'online superstore market' is highly gerrymandered and is in no way a properly defined antitrust market"). ABA brings a unique perspective in support of the online superstores market alleged by Plaintiffs,[6] and ABA's claim presents a strong additional component of Amazon's abuse of its monopoly (and resultant monopsony) power in such market. ABA's claim may be impeded as a practical matter, however, if Amazon were to succeed in obtaining a ruling or finding in this case redefining the relevant market alleged by Plaintiffs, or rejecting Plaintiffs' related theory of Amazon's anticompetitive conduct (which affects ABA members, at least potentially, and is the subject of Amazon's pending motion to dismiss). In *Duke Energy*, *supra*, the Fourth Circuit recently held that anticompetitive conduct was sufficient under §2 of the Sherman Act "based on the *combined effect* of two main components" of such conduct, observing that "'the pattern gives increased plausibility to the claim'" of unlawful monopolization. __ F.4th __, 2024 WL 3642432, at *12-13 (emphasis in original) (quoting Areeda & Hovenkamp, ¶310c7).[7]

---

[6] *See* ABA's Opening Brief, p.14; ABA's FER-8.

[7] In this regard, intervention as of right under Rule 24(a)(2) requires only that disposition of this case without intervention by ABA "*may* as a *practical matter* impair *or impede*" ABA's ability to protect its asserted interest in the subject matter of the case (emphasis added) — *not* that such disposition "would foreclose" such protection, as Amazon mistakenly asserts (Amazon Br. p. 24).

Further, if intervention by ABA were not allowed in this case, ABA's sole claim for relief — in the form of equitable structural relief, restricting Amazon to the sale of books online as an agent of third-party sellers rather than as a seller itself (relief that Amazon has already agreed to for e-books, which would erode Amazon's monopsony power) — may as a practical matter be impeded both by *stare decisis* and because (as no party seriously disputes) structural antitrust relief is more difficult to obtain in cases brought only by private parties and not by the government. *See* ABA's Opening Brief, pp. 6-7, 17-19. The latter practical impediment would likely be exacerbated by the *state decisis* effect of denying ABA's motion to intervene in this case, with the concurrence of the government, based on its misapprehension of ABA's claim seeking antitrust structural relief which the government has declined to pursue. *See* note 7, *supra*.

In an analogous case, this Court reversed denial of intervention under Rule 24(a)(2), sought by a private association seeking only additional injunctive relief in a case brought by the government (federal and state), holding that the association's claim for equitable relief may otherwise be impeded as a practical matter both because the association sought "[equitable] remedies that differ from those sought by the original plaintiffs" and because of the potential impact of s*tare decisis*. *United States v. Stringfellow*, 783 F.2d 821, 826-827 (9th Cir. 1986), *vacated on other grounds*, 480 U.S. 370 (1987).

The Court recognized in this regard that "'it is not enough to deny intervention'" under Rule 24(a)(2) that "'applicants may vindicate their interests in some later, albeit more burdensome, litigation'". *Id*. at 827. To require ABA to duplicate much of the government's effort in this case would unnecessarily burden the courts as well as ABA (perhaps prohibitively so). Rule 24(a)(2) is accordingly applied "'broadly in favor of proposed intervenors'" because this "'liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts'" so as to "'prevent or simplify future litigation involving related issues[.]'" *United States v. City of Los Angeles*, 288 F.3d 391, 397-398 (9th Cir. 2002).

### C. The Court Should Reject Amazon's Suggestions — Neither of Which Are Joined by Plaintiffs — That Plaintiffs Will Adequately Represent ABA's Interest in This Case, and Alternatively, That ABA's Motion to Intervene Was Untimely.

As Plaintiffs make quite clear throughout their Answering Brief, ABA's motion to intervene in this case could not properly be denied on grounds that Plaintiffs will adequately represent ABA's interest in this case, considering that Plaintiffs' brief confirms Plaintiffs' refusal to pursue the claim that ABA has tendered in this case. *See* ABA's Opening Brief, p. 21 n.19 (Plaintiffs expressly so refused). Amazon's suggestion to the contrary (Br. pp. 28-31) simply reflects its

determination to avoid enhanced exposure to antitrust liability, and to the equitable relief sought, if ABA's claim is pursued in this case.

In this regard, Amazon ignores controlling law that plaintiffs do not adequately represent a putative intervenor's interest unless plaintiffs "will undoubtedly make all the [putative] intervenor's arguments[,]" *United States v. Oregon*, 829 F.2d at 638, and that the burden of showing the contrary "is minimal[,]" *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983), citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972), and is met where, as here, the putative intervenor "brings a unique perspective to this litigation that existing parties may neglect." *Western Watersheds*, 22 F.4th at 842. *See* ABA's Opening Brief, pp. 20-23 & n.19.

Alternatively, Amazon asserts that ABA's motion to intervene in this case was untimely, although tellingly, Plaintiffs make no such assertion. In reversing denial of a motion to intervene on timeliness grounds, this Court recently recognized in *Western Watersheds* that "prejudice to existing parties[] is 'the most important consideration in deciding whether a motion for intervention is untimely.'" *Id*. at 838. Amazon's assertions of prejudice, however, simply boil down to Amazon's determination to avoid enhanced exposure to antitrust liability, and to the equitable relief sought by ABA, if ABA's claim is pursued in this case — the type of argument squarely rejected in *Western Watersheds*. *See id*. at 839

(that an intervenor "might raise new, legitimate arguments is a reason too grant intervention, not deny it").

Thus, Amazon argues that "adding ABA's ... legal claim would be prejudicial and disruptive" because "the parties have already fully briefed a motion to dismiss relating only to Plaintiffs' claims." Amazon Br. pp. 26-27. This is only another reason to expedite resolution of this appeal; it is not a reason to exclude ABA's claim from this case, on grounds rejected in *Western Watersheds* — that ABA's claim may have merit and thus bolster Plaintiffs' claim of anticompetitive conduct by Amazon in the online superstores market, precluding dismissal of such claim. Amazon suggests that ABA's intervention would prolong this case, but ABA expressly committed below to abiding by all scheduling orders and other procedural orders in this case as though it had been a party thereto from the start,[8] which is why ABA seeks expedited resolution of this appeal. Similarly, while Amazon further notes that ABA's intervention would require some additional discovery, that would be no less true if ABA had filed its motion to intervene the day after the Complaint was originally filed in this case. The fact that ABA filed

---

[8] *See* FER-12-13 (ABA commitment to the court below that "[t]his case will not be delayed by ABA's intervention because ABA will be subject to all existing procedural orders, as though it had been a party from the start of this case"); ABA's Opening Brief, p. 26 (same); Plaintiffs' SER-198 n.12 ("no prejudice can come from ... pretrial proceedings[] because an intervenor must accept the proceedings as he finds them and has no right to relitigate issues already decided") (internal quotation marks omitted); ABA's Opening Brief, p. 25 (same).

its motion later is thus not prejudicial to Amazon; it simply hopes to evade ABA's claim altogether.

As in *Western Watersheds*, therefore, Amazon's assertion of prejudice due to the timing of ABA's motion below "boils down" to Amazon's concern that ABA's intervention in this case may make it "more difficult" for Amazon to defend, but this is a "poor reason to deny intervention" given the potential merit of ABA's claim (22 F.4th at 839), which Plaintiffs have acknowledged (Gov't Br. p. 1) ("ABA may have a legitimate antitrust claim against Amazon").

The absence of cognizable prejudice to Amazon should be fatal to its untimeliness assertion because the timeliness requirement under Rule 24 "'is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply [for intervention] sooner.'" *Kalbers v. United States Dept. of Justice*, 22 F.4th 816, 823 (9th Cir. 2021) (discouraging hasty intervention motions that waste resources of courts and parties). While it should therefore not be necessary for ABA to justify the timing of its motion to intervene in this case (at an early stage of the proceedings below), ABA has fully done so. *See* ABA's Opening Brief, pp. 24-25 & n.21 (summarizing such justification).[9]

---

[9] Amazon fails to come to grips with ABA's justification for the timing of its motion to intervene below. Before filing such motion, ABA's counsel in this case,

## II. ABA MEETS THE STANDARDS FOR PERMISSIVE INTER-VENTION UNDER RULE 24(b)(1)(B) IN THIS CASE.

For the same reasons that ABA is entitled as of right to intervene in this case, as set forth in part I above, ABA should in any event be permitted to intervene under Rule 24(b)(1)(B), whether the proper standard of review in the circumstances of this case is *de novo* or abuse of discretion. *See* ABA's Opening Brief, pp. 25-28. As ABA has already shown, its claim presented below against Amazon under §2 of the Sherman Act shares with Plaintiffs' corresponding claim common questions of fact and law. *See*, *e.g.*, pp. 10-12, *supra*. ABA has likewise already shown that its motion to intervene below was timely and that its intervention in this case will not delay resolution of the case or otherwise prejudice the existing parties. *See*, *e.g.*, pp. 15-17, *supra*.

In opposing permissive intervention, the respective briefs on behalf of appellees simply reiterate their misapprehension or mischaracterization of ABA's

---

first retained by ABA last fall, was required **(1)** to fully digest Plaintiffs' unusually expansive Complaint (SER-1-179), and cull out allegations potentially relevant to ABA's claim, which is included in SER-180-201 (ABA's motion below) and FER-3-16 (ABA's reply brief below); **(2)** to research and apply federal antitrust law relevant to ABA's claim, both under the Sherman Act (*see*, *e.g.*, SER-187-191; FER-8-11) as well as the Robinson-Patman Act (*see*, *e.g.*, FER-13-15); *and* **(3)** to research and apply case law justifying ABA's intervention in this case under Rule 24 (*see*, *e.g.*, SER-192-198; FER-7, 10-13). A *de novo* standard of review applies to the timeliness issue in the context of this case. *See* ABA's Opening Brief, p.23 n.20; p. 25 & n.22.

claim,[10] while essentially ignoring ABA's commitment to pursuing its claim itself in accord with all scheduling orders and other procedural orders already entered below, as though ABA were a party to this case from the start. In this light, the admonition pronounced by this Court in *United States v. Los Angeles*, in reversing denial of permissive intervention, bears repeating: "the idea of 'streamlining' the litigation, as both [defendants and the federal government] describe it, should not be accomplished at the risk of marginalizing those ... who have some of the strongest interests in the outcome." 288 F.3d at 404.

### III. RESOLUTION OF THIS APPEAL SHOULD BE EXPEDITED TO PREVENT THE APPEAL FROM BECOMING MOOT.

ABA has moved to expedite resolution of this appeal to prevent it from becoming moot, to the extent the appeal is not resolved in time to allow ABA an adequate opportunity for necessary fact discovery in the District Court below, which has set an August 8, 2025 deadline for completion of fact discovery. While briefing of this appeal has accordingly been expedited, ABA has also requested that the Court dispense with oral argument of this appeal, and that the Court issue a

---

[10] Unlike in *American Booksellers Assn., Inc. v. Barnes & Noble, Inc.*, 135 F.Supp.2d 1031 (N.D. Cal. 2001), ABA does not seek damages in this case, only equitable relief (contrary to the implication in Gov't Br. p. 31). *See*, *e.g.*, ABA's Opening Brief, pp. 6-7 (equitable structural relief sought by ABA in this case), pp. 27-28 (simplified basis under *Barnes & Noble* for obtaining equitable relief, against dominant book retailers, for inducing self-advantageous price discrimination by book wholesalers) (damage claims were held insufficiently proven in *Barnes & Noble*).

decision on the merits of this appeal before next October if feasible, by deferring if necessary the preparation of any opinion in support of such decision, an approach which this Court adopted in the analogous *Stringfellow* case. *See* ABA's Opening Brief, pp. 29-32.

Appellees have raised no objection to dispensing with oral argument of this appeal. Plaintiffs, however, have objected to ABA's request that a supporting opinion be deferred if necessary, as in *Stringfellow*, until after the Court issues an expedited decision on the merits. Gov't Br. p. 32.[11] Plaintiffs' concern that this approach may cloud their assessment of whether to seek rehearing en banc, or Supreme Court review, ignores the facts that the current appeal is taken from an order providing no reasoning, which has not inhibited anyone from raising any or all issues on this appeal, and the *Stringfellow* case was itself reviewed by the Supreme Court. Moreover, an expedited decision on the merits of this appeal could include a bare-bones recitation (in a paragraph or two) of the general grounds for the decision, to be elaborated in a subsequent opinion, if the Panel so elects.

---

[11] Amazon states that it "defers to the Court's judgment on the timing of its decision." Amazon Br. p. 36. Amazon goes on, however, to reiterate its assertion (rebutted in part I.C, *supra*) that ABA's motion to intervene in this case was untimely, noting that it came after a deadline for joining parties — but no such deadline pertains to intervention. *See* ABA's Opening Brief, p. 25 n.21 (citing case law).

Finally, ABA takes this opportunity to respectfully request a further step to expedite resolution of this appeal, in line with Plaintiffs' suggestion (Gov't Br. p. 32) — that if the Panel reaches a decision on the merits in favor of ABA, the Panel should expedite issuance of its mandate in this case.

## CONCLUSION

For all the reasons presented herein, the Court should reverse the order of the District Court below and mandate that ABA is entitled to intervene in this case as a matter of right under Rule 24(a)(2), or alternatively, that ABA should be permitted to intervene in this case under Rule 24(b)(1)(B), and the Court should do so on an expedited basis (before October 2024 if feasible) to prevent this case from becoming moot.

Respectfully submitted,

*s/ William D. Fisher*
William D. Fisher, Esq.
Potomac Law Group, PLLC
1455 NW Leary Way, #400
Seattle, WA 98107
(206) 599-8888
wfisher@potomaclaw.com

*s/ Timothy W. Bergin*
Timothy W. Bergin, Esq.
Potomac Law Group, PLLC
1717 Pennsylvania Ave., NW, #1025
Washington, DC 20006
(703) 447-4032
tbergin@potomaclaw.com

Counsel for Proposed Intervenor, Movant - Appellant
American Booksellers Association, Inc.

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____

I am the attorney or self-represented party.

**This brief contains** _____4978_____ **words,** including _____0_____

words manually counted in any visual images, and excluding the items exempted

by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and

(6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or
   Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
   [ ] it is a joint brief submitted by separately represented parties.
   [ ] a party or parties are filing a single brief in response to multiple briefs.
   [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** _____s/  Timothy W. Bergin_____ **Date** _____August 21,
2024_____
*(use "s/[typed*

22